UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| GARY L. HAZELWOOD, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| v. | ) | No. 3:13 CV 90 |
| SUPERINTENDENT, | ) | |
| Respondent. | ) | |

## OPINION and ORDER

Gary L. Hazelwood, a *pro se* prisoner, filed a habeas petition challenging a prison disciplinary proceeding (DE # 1.) In MCF #12-09-0155, a hearing officer found Hazelwood guilty of threatening a staff member in violation of disciplinary rule #B213. (DE 12-8.) The charge was initiated on September 11, 2012, when Officer A. Brandy wrote a conduct report stating as follows:

> On 9-11-2012 at approximately 11:45 I Officer A. Brandy overheard Offender Hazelwood, Gary #963394 J-142 [a]s the offenders were returning to the shop from chow Offender Hazelwood, Gary #963394 J-142 looked toward me then turned to another offender and stated in a voice loud enough for me to hear "that's ok the bitch is gonna get hers." In this area there are only two custody staff and I am the only female member who has been working around him. When Jacobs Trading came out to the hallway to eat Offender Hazelwood, Gary #963394 J-142 addressed me about an incident that was addressed with his shop supervisor the last day he worked saying "why did you tell Scott (shop foreman) to fire me."

(DE # 12-1.)

On September 13, 2012, Hazelwood was formally notified of the charge and given a copy of the conduct report. (DE ## 12-1, 12-2.) He pled not guilty, requested a lay advocate, and requested witness statements from staff member Scott Beckley, and

from inmates Jon Wethington and Richard Clark. (DE # 12-2.) He also requested a review of the surveillance video. (*Id.*) Statements were obtained from all three witnesses prior to the hearing. Beckley stated that he was not present during the incident. (DE # 12-3.) Wethington stated as follows:

> On 9-11-12 offender Hazelwood was upset about the way sack lunches were being handed out by C/O Brandy. Hazelwood informed C/O that we was going to put paper in on the matter.[1] Hazelwood walked away [sic] talk about his ex-wife as far as what I don't know what.

(DE # 12-4.) Clark stated as follows:

> On the date in question I was sitting down by the industry time clock eating my lunch. During talking and eating with other inmates I heard a discussion involving Hazelwood and Officer Brandy. I overheard him tell Brandy that he was going to "put in paper" on her regarding the handing out of lunch sacks. Then Hazelwood walked off and I went back to my business. I've also heard that Offender Hazelwood has a court case coming up that he is concerned about. That's all I know. I have no knowledge of anything else that may or may not have happened.

(DE # 12-5.) The hearing officer reviewed the surveillance video per Hazelwood's request, but noted that due to the camera angle the incident "could not be viewed." (DE # 12-7.)

On September 19, 2012, the hearing officer conducted a hearing on the charge. (DE # 12-8.) Hazelwood admitted making the statement, but explained that he had an on-going divorce case at the time of this incident. (*Id.*) He claimed that when he said "That's ok the bitch is gonna get hers!" it was in reference to his ex-wife, not Officer Brandy. (*Id.*; DE # 14-1.) Hazelwood requested that the law librarian, Officer Flack (first

---

[1] Hazelwood explains that this meant he was going to file a grievance against Officer Brandy. (DE # 14 at 4.)

name unknown), participate in the hearing as a live witness. (DE # 12-8.) The hearing officer denied the request because Officer Flack was not present at the time of the incident. (*Id.*) The hearing officer found Hazelwood guilty, and as a result he lost earned-timed credits and received a credit-class demotion. (*Id.*) His administrative appeals were denied (DE # 12-9 to 12-13), and he thereafter filed this petition.

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Hazelwood raises a number of claims that are premised on alleged violations of Indiana Department of Correction ("IDOC") policies. (DE # 1 at 5-8.) However, even if IDOC rules were violated in connection with the hearing, this would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary

proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). These claims are denied.

Hazelwood also claims that his due process rights were violated because he was not permitted to call Officer Flack as a live witness. A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Inmates do not have an unfettered right to call live witnesses or to confront or cross-examine witnesses, since the formal rules of evidence do not apply. *Id.*; *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000).

Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence); *see also Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) ("exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt"). The denial of the right to present evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (inmate was not prejudiced by inability to call witness whose proposed testimony would not have exculpated him from the charge).

Here, the record shows that Hazelwood requested statements from three witnesses at the time of screening, and those statements were obtained and considered. (DE ## 12-2 to 12-5.) There is nothing to reflect that he requested a witness statement from Officer Flack when he had the opportunity to do so, and he cannot fault the hearing officer for failing to consider evidence he did not properly request. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). Assuming Hazelwood made a proper request for Officer Flack's testimony, the hearing officer deemed his testimony irrelevant since he was not present during this incident. Without a showing of prejudice, Hazelwood cannot demonstrate a due process error.

In his traverse, Hazelwood explains that he wanted Officer Flack to "authenticate" documents from his divorce case. (DE # 14 at 3.) However, there was no need for Officer Flack to authenticate documents since the formal rules of evidence did not apply at the hearing. *See Walker*, 216 F.3d at 637. Moreover, the hearing report reflects that the hearing officer considered the divorce documents in reaching her decision,[2] and that she was otherwise well aware of Hazelwood's claim that he was talking about his ex-wife. (*See* DE # 12-8.) The hearing officer nevertheless chose to credit the account of Officer Brandy that Hazelwood seemed angry with her on the date

---

[2] Hazelwood complains that these documents later went missing from his offender packet (DE # 1 at 6), but this assertion is puzzling since the documents were included in the record submitted to this court. (*See* DE ## 12-10 to 12-12.) Hazelwood believes the hearing officer committed a violation of prison policy pertaining to preservation of the record, but even if he is correct this would not entitle him to federal habeas relief. *Estelle*, 502 U.S. at 67-68.

of this incident and looked directly at her before making this statement in a loud voice to another inmate. Additional testimony about Hazelwood's divorce case would not have directly undercut this evidence. Therefore, Hazelwood has not demonstrated a due process error.[3]

Hazelwood next claims there was insufficient evidence of his guilt. The relevant standard is whether there is "some evidence" to support the guilty finding. *Hill*, 472 U.S. at 457. This is not a high standard, and in assessing the sufficiency of the evidence courts do not "conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). The court will overturn a guilty finding based on insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

---

[3] Hazelwood also asserts in passing that he was not given legible copies of the statements of his two inmate witnesses (DE 1 at 7), but there is nothing to reflect that he brought this to the attention of the hearing officer. Moreover, the statements considered by the hearing officer and submitted to this court are legible. The handwriting and grammar in these two statements could be improved, but the gist of the statements can be discerned. There is nothing to indicate Hazelwood was denied exculpatory evidence within these statements.

Upon review, there is sufficient evidence to support the hearing officer's determination that Hazelwood was guilty of threatening. Officer Brandy reported that Hazelwood seemed upset with her on the date of this incident, and as he was walking by, looked directly at her and then said in a loud voice, "That's okay the bitch is gonna get hers!" Hazelwood admitted making this statement, and his own witnesses confirmed that he was angry with Officer Brandy on the date in question and had threatened to file a grievance against her. Although there might be some other plausible explanation for his statement, to be constitutionally adequate, the evidence need not point to only one logical conclusion; rather, the question is whether there is some evidence to support the hearing officer's determination, and that standard is satisfied here. *See Hill*, 472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination). Accordingly, this claim is denied.

Finally, Hazelwood claims that he was denied an impartial decision-maker. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and the constitutional standard for improper bias is high. *Piggie*, 342 F.3d at 666. Due process is violated if a prison official who is substantially involved in

the underlying incident also acts as a decision-maker. *Id.*; *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Hazelwood does not allege that occurred here, nor is there any indication from the record that the hearing officer was involved in the underlying incident leading to the disciplinary charge. Instead Hazelwood appears to claim that the hearing officer was biased because she declined to credit his version of events and rejected his evidence, but adverse rulings alone do not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994).

For these reasons, the petition (DE # 1) is **DENIED**.

                              **SO ORDERED.**

Date: December 20, 2013

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT